IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| BEATRICE BIODIESEL, LLC, | ) | |
| | ) | CASE NO. BK08-41927-TLS |
| Debtor(s). | ) | A09-4046-TLS |
| RICK D. LANGE, Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | CHAPTER 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| COUNTY OF GAGE, a political subdivision | ) | |
| of the State of Nebraska; PATRICIA | ) | |
| MILLIGAN, County Assessor for the County | ) | |
| of Gage; and LAURIE WOLLENBURG, | ) | |
| County Treasurer, County of Gage, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is before the court on the plaintiff's motion for summary judgment (Fil. #14). No resistance was filed. Brian S. Kruse represents the plaintiff and Randall R. Ritnour represents the defendants. Evidence and a brief were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The debtor owns a biodiesel facility in Beatrice, Gage County, Nebraska. The plant was newly built and had not been put into operation at the time the debtor filed its Chapter 11 petition, later converted to a Chapter 7 case. Gage County assessed personal property taxes on the personal property at the facility. The Chapter 7 trustee filed this adversary proceeding seeking a declaratory judgment that no taxes are currently owing on the personal property; that no taxes may be collected on the personal property; and that Gage County has no liens against the personal property, but if it does, the liens should be avoided. The trustee has now filed a motion for summary judgment.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 868 (8th Cir. 2005); *Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 371 F.3d 397, 401 (8th Cir. 2004).

To withstand a motion for summary judgment, the non-moving party "has an affirmative burden to designate specific facts creating a triable controversy." *Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004) (internal citations omitted). Failure to oppose a basis for summary judgment constitutes a waiver of that argument. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734-35 (8th Cir. 2009). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The following facts, as taken from the parties' joint preliminary pretrial statement, are not in dispute:

1. Plaintiff is the duly appointed and qualified Chapter 7 bankruptcy trustee with regard to the bankruptcy case of Beatrice Biodiesel, LLC, which the debtor filed as a Chapter 11 case on August 21, 2008, and which was converted to Chapter 7 on October 21, 2008.

2. Defendant County of Gage is a political subdivision of the State of Nebraska.

3. Defendant Patricia Milligan is the duly elected County Assessor for Gage County.

4. Defendant Laurie Wollenburg is the duly elected County Treasurer for Gage County.

5. The trustee has the authority and the duty to determine the existence or absence of liens upon property of the debtor's bankruptcy estate.

6. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This court has the authority to grant the relief requested. This is a core proceeding pursuant to, without limitation, 28 U.S.C. § 157(b)(2)(A), (K), and (O).

7. Venue in this court is proper pursuant to 28 U.S.C. § 1409(a).

8. Gage County claims personal property tax liens for the years 2008 and 2009 (and forward) on all personal property of the debtor, including, but not limited to, any personal property scheduled per the debtor's bankruptcy schedules located at the debtor's facility at 722 Kinney Drive, Beatrice, Nebraska, which facility is legally described as:

Lots Twenty-nine (29), Thirty (30), Thirty-one (31), Thirty-two (32), Thirty-three (33), Thirty-four (34), Thirty-five (35), Thirty-six (36) and Thirty-seven (37), Gage County Industrial Park First Subdivision, City of Beatrice, Gage County, Nebraska; and that part of Kinney Avenue (now vacated) located West of Centennial Drive, between Lots 34 and 35, Gage County Industrial Park First Subdivision, City of Beatrice, Gage County, Nebraska.

9. At no time has the debtor's biodiesel facility ever been fully operational. It is substantially complete but has never been fully commissioned. The facility includes a small completed office building that has been and is now being used by the secured creditor's on-site consultant. The office contains some office equipment. The facility is designed to process crude soybean oil into biodiesel. The process includes a refinery for pre-treating the crude soybean oil and a biodiesel facility for processing biodiesel from the pre-treated soybean oil. The biodiesel portion of the facility has never been operational and there are still items to complete before this portion is able to process biodiesel. The refinery was commissioned and started in a manual mode through a three-day period in December 2007 to meet the requirements of an incentive program. Upon the completion of this three-day trial, the refinery was shut down, the vessels were emptied, and any soybean oil in the tanks was sold to continue construction.

10. Virtuoso Biofuels Services ("VBS") was hired in March 2008 to finish the construction phase, commission, and start up the facility. Due to money issues, the facility went into bankruptcy in September 2008. At this time, the facility has not been completed and has never operated to generate biodiesel. VBS was hired by Agstar (Bank) and the trustee (Rick Lange) to protect the assets of the facility. VBS has an employee on site Monday through Friday from 7 a.m. to 5 p.m. each week and hired a security firm (Silverhawk Security) to be on site Monday through Friday from 5 p.m. to 7 a.m., with 24-hour coverage on Saturday and Sunday. Because the plant is non-operational and there are a lot of assets on site, VBS has set up checkpoints for the security to complete hourly rounds to verify there is no one on site and that none of the equipment has been tampered with or stolen. The VBS person on site has the following responsibilities to ensure that the facility assets are safe and protected from theft, vandalism, degradation, and to ensure the safety of all security personnel:

      a. Review of the Deggy Security System – Verification that security is completing the hourly rounds;

      b. Reactor Nitrogen Pressure – The reactors are filled with a dry catalyst that must be kept moisture-free through the use of nitrogen. The nitrogen pressure is recorded daily.

      c. Fire Protection System – The protection of the biodiesel and refinery-area assets from fire is managed by a diesel-powered water pump. This system is run weekly and the pressures and temperatures are recorded for verification.

      d. Diked Tank Farms – The equipment in the dikes of the tank and biodiesel area are open to the atmosphere. When rain or snow melting occurs, these dikes begin to fill with water. The water is pumped out from the dikes to protect the equipment from water damage.

      e. Water Softener – A small amount of water is run through the softeners weekly to maintain the resin in the softeners.

f. Cooling Tower Pumpout – Rainwater is manually pumped out of the cooling tower basin to keep it from sitting in the cooling tower pumps.

g. Pump Rotation – Pumps and motors are rotated by hand every other month to protect the bearings and windings.

h. General Maintenance – Small repairs and clean-up are performed to maintain the facility in an orderly manner.

i. Emergencies – On-call 24/7 for any emergency that may affect the safety of individuals or cause the loss of facility assets.

11. After the debtor filed for bankruptcy protection, the County Assessor for Gage County filed one or more personal property returns on behalf of the debtor pursuant to Neb. Rev. Stat. § 77-1233.04.

The evidence submitted by the trustee also establishes the following facts:

12. The debtor's facility has an annual production capacity of up to 50 million gallons of biodiesel fuel.

13. To date, the facility has produced no fuel.

14. The facility is unable to produce fuel until the following steps are completed:

a. fix minor mechanical issues, with an estimated cost of more than $400,000.00;

b. program the computers necessary to operate the facility;

c. commission the entire facility, which includes an inspection by the primary technology provider, flushing the system, and pre-operational testing;

d. hire and train employees;

e. create and implement safety programs; and

f. enter into agreements to purchase crude soybean oil and sell fuel.

15. The biodiesel production facility, which processes biodiesel fuel from crude soybean oil treated at the refinery section of the plant, accounts for approximately 75 percent of the production process.

16. The biodiesel facility has never been operational.

-4-

17. The refinery was commissioned and started in manual mode for a three-day trial in December 2007 to meet the requirements of an incentive/grant program. A small amount of crude oil was processed in that trial.

18. No biodiesel fuel has ever been produced at the facility. It has never been fully operational or used as a functioning business. None of the personal property has been placed in service or in a state of readiness, nor has it been used for commercial, manufacturing, or processing activities. It does not produce income or recurring income, and is not being held to produce a gain upon disposition.

Nebraska law exempts from taxation "tangible personal property which is not depreciable tangible personal property as defined in § 77-119." Neb. Rev. Stat. § 77-202(3). "Depreciable tangible personal property" is "tangible personal property which is used in a trade or business or used for the production of income and which has a determinable life of longer than one year." Neb. Rev. Stat. § 77-119. "Tangible personal property" is all personal property that has a physical existence, but not money. It includes "trade fixtures, which means machinery and equipment, regardless of the degree of attachment to real property, used directly in commercial, manufacturing, or processing activities conducted on real property." Neb. Rev. Stat. § 77-105.

The property at issue here is clearly tangible personal property. The trustee asserts that it is not "depreciable tangible personal property" because it is not used in a trade or business or for the production of income. Since Nebraska has not enacted depreciation provisions as part of its revenue and taxation code, and the language of § 77-119 mirrors the language of the Internal Revenue Code at 26 U.S.C. § 167(a),[1] it is appropriate to look at how the federal depreciation rules have been interpreted.

The depreciation deduction is allowed from the time the asset is "placed in service." 26 C.F.R. § 1.167(a)-10(b). Property is placed in service when it is "placed in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity." 26 C.F.R. § 1.167(a)-11(e). The Eighth Circuit Court of Appeals has said that an ethanol plant is placed in service "only if it is productive on a fairly consistent basis." *United States v. Tierney*, 947 F.2d 854, 866 (8th Cir. 1991).[2]

---

[1]§ 167 Depreciation

(a) General rule. — There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) —
    (1) of property used in the trade or business, or
    (2) of property held for the production of income.

[2]*Tierney* concerned whether a tax credit was appropriately claimed. The Treasury
(continued...)

-5-

The Eighth Circuit Court of Appeals has also said, with respect to whether assets are "used in a trade or business," property must actually be put into use in order to be "used in a trade or business or for the production of income." *Simonson v. United States*, 752 F.2d 341, 342 (8th Cir. 1985) ("Although idled property once used in trade or business remains in such use until withdrawn or abandoned, unused property purchased for a non-existent future commercial enterprise is not 'used for trade or business.'").

The trustee's uncontroverted evidence establishes that the debtor's biodiesel plant has not been placed in service, used in a trade or business, or used for the production of income. The facility is not operating and, in fact, is inoperable. Other than a partial gear-up for a three-day test run of a section of the plant, the facility has not been used. Therefore, the debtor's tangible personal property is not depreciable tangible personal property as defined in the Nebraska statutes and is exempt from taxation. The trustee's motion should be granted.

IT IS ORDERED: The plaintiff's motion for summary judgment (Fil. #14) is granted. Separate judgment will be entered.

DATED:  May 27, 2010.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
*Brian S. Kruse
Randall R. Ritnour
U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[2](...continued)
Regulations for the depreciation deduction and the investment tax credit are identical with regard to the "placed in service" requirement, so courts have interpreted the two regulations in the same manner. *Sealy Power, Ltd. v. Comm'r*, 46 F.3d 382, 389 (5th Cir. 1995).